UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
**SOUTHERN DIVISION at LONDON**

| | |
|---|---|
| DONNIE F. BURTON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Civil Action No. 07-428-JMH |
| ) | |
| v. ) | |
| ) | |
| MICHAEL J. ASTRUE, COMMISSIONER ) | **MEMORANDUM OPINION AND ORDER** |
| OF SOCIAL SECURITY, ) | |
| ) | |
| Defendant. ) | |

\*\*   \*\*   \*\*   \*\*   \*\*

This matter is before the Court on cross motions for summary judgment [Record Nos. 10 and 11][1] on Plaintiff's appeal of the Commissioner's denial of her application for Social Security disability benefits and Supplemental Security Income (SSI). The Court having reviewed the record and being otherwise sufficiently advised, will deny Plaintiff's motion and grant the Commissioner's motion.

**I. FACTUAL AND PROCEDURAL BACKGROUND**

Plaintiff, Donnie Burton, filed her fourth Supplemental Security Income and Disability Insurance Benefits applications on October 12, 2004. (TR 44-57, 235-36). At the time of the ALJ's decision, Burton was 56 years old, had an eighth grade education,

---

[1] These are not traditional Rule 56 cross motions for summary judgment. Rather, they are procedural devices used by the Court to obtain the views of the parties regarding the sufficiency of the evidence contained in the administrative record developed before the Commissioner.

and had work experience as a dietary aid and a part-time cook in a hospital. (Transcript of Record, "TR" 44, 94, 331). Burton claims that she became disabled on May 9, 2000, due to an inability to stand on her feet, swelling in her legs, headaches, high blood pressure, "nerves," problems with rapid heart beats, and fatigue. (TR 73-74). Burton's claim was initially denied on March 10, 2005, (TR 32-35) and on reconsideration on June 7, 2005. (TR 38-40). Burton subsequently requested an administrative hearing. (TR 41-43). On April 5, 2006, a hearing was held before an Administrative Law Judge ("ALJ") who later issued an opinion finding that Burton was not disabled under the Social Security Act. (TR 11-20). In making that determination, the ALJ comprehensively discussed the medical evidence and employed the five-step sequential analysis required by 20 C.F.R §§ 404.1520, 416.920. *Id*.

Applying the five-step analysis, the ALJ concluded at steps one and two that Burton was not engaged in any gainful activity, and that her hypertension, obesity, and degenerative disc disease constituted "severe impairments." (TR 17, Findings Nos. 2, 3). However, the ALJ found that these impairments were not severe enough to meet or medically equal one of the listed impairments in Appendix 1 to Subpart P of the regulations. (TR 18, Finding No. 4). The ALJ found that Burton retained the residual functional capacity (RFC) to perform the requirements of medium work, but was precluded from sitting, standing, or walking more than six hours each out of

2

an eight-hour day. (TR 18, Finding No. 5). In response to a hypothetical question limiting the Burton to medium exertional level, a vocational expert testified that Burton would be able to return to the work she previously did. (TR 343). Based upon this information and the fact that the Dictionary of Occupational Titles classified Burton's job as light exertion, unskilled to semi-skilled work, the ALJ concluded that Burton was not disabled. (TR 20, Finding Nos. 6, 7).

The Social Security Appeals Council declined Burton's request for review, and the ALJ's opinion became the final decision of the Commissioner. (TR 5-8).

## II. OVERVIEW OF THE ALJ HEARING

In determining whether a claimant is disabled or not, the ALJ conducts the following five-step analysis:

   1.) Is the individual engaging in substantial gainful activity? If the individual is engaging in substantial gainful activity, the individual is not disabled, regardless of the claimant's medical condition.

   2.) Does the individual have a severe impairment? If not, the individual is not disabled. If so, proceed to step 3.

   3.) Does the individual's impairment(s) meet or equal the severity of an impairment listed in appendix 1, subpart P of part 404 of the Social Security Regulations? If so, the individual is disabled. If not, proceed to step 4.

   4.) Does the individual's impairment(s) prevent him or her from doing his or her past relevant work, considering his or her residual functioning capacity? If not, the individual is not disabled. If so, proceed to step 5.

   5.) Does the individual's impairment(s) prevent him or

3

>  her from performing other work that exists in the national economy, considering his or her residual functioning capacity together with the "vocational factors" of age, education, and work experience? If so, the individual is disabled. If not, the individual is not disabled.

*Heston v. Comm'r of Soc. Sec.,* 245 F.3d 528, 530 (6th Cir. 2001). "The burden of proof is on the claimant throughout the first four steps of this process to prove that he is disabled. If the analysis reaches the fifth step without a finding that the claimant is not disabled, the burden transfers to the Secretary." *Preslar v. Sec'y of Health and Human Servs.,* 14 F.3d 1107, 1110 (6th Cir. 1994).

### III. STANDARD OF REVIEW

In reviewing the ALJ's decision to deny disability benefits, the Court may not try the case *de novo*, nor resolve conflicts in the evidence, nor decide questions of credibility. *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). Instead, judicial review of the ALJ's decision is limited to an inquiry into whether the ALJ's findings were supported by substantial evidence, *see* 42 U.S.C. §405(g), *Foster v. Halter*, 279 F.3d 348, 353 (6th Cir. 2001), and whether the ALJ employed the proper legal standards in reaching her conclusion. *See Landsaw v. Sec'y of Health and Human Servs.* 803 F.2d 211, 213 (6th Cir. 1986). Substantial evidence is "more than a scintilla of evidence, but less than a preponderance; it is such relevant evidence as a

4

reasonable mind might accept as adequate to support a conclusion." *Cutlip*, 25 F.3d at 286.

## IV. ANALYSIS

As previously noted, this is Burton's fourth time filing for benefits. Burton's three prior claims were denied on July 27, 2001, December 11, 2002, and September 22, 2004. In the September 22, 2004, decision the ALJ determined that Burton was capable of medium work except for jobs which include high levels of stress. (TR 253, Finding No. 4). In the most recent decision, the ALJ correctly noted that she is bound by the previous ALJ's findings and determinations, absent new evidence or a showing of "changed circumstances." (TR 14-15); see *Drummond v. Comm'r of Soc. Sec.*, 126 F.3d 837, 842 (6th Cir. 1997)("When the Commissioner has made a final decision concerning a claimant's entitlement to benefits, the Commissioner is bound by this determination absent changed circumstances"). The ALJ in this case, after considering all the evidence of record, found no evidence that Burton had experienced any significant physical deterioration since the prior hearing decision. Consequently, the ALJ was convinced that Burton's exertional capacity had not changed. (TR 15).

The ALJ found that while Burton has severe impairments, she retains the ability to perform medium level work; her allegations regarding her limitations were not entirely credible; she can still perform her past relevant work; and she is not under a disability

5

as defined in the Social Security Act. Burton argues that these findings were erroneous and not supported by substantial evidence.

Burton first contends that the medical evidence establishes that her impairments meet the requisite level of severity deemed by the Social Security Administration to be sufficient to prevent a person from engaging in any substantial gainful activity as set out in 20 CFR § 404.1505 and 20 CFR § 416.905. In support of her argument Burton cites to the medical records contained in the administrative record. The list of Burton's visits to the hospital and doctors' offices from 2002 through 2005 is extensive; however, some of these visits occurred prior to Burton's third denial of benefits in September of 2004 and were considered by the previous ALJ. As stated above, in order to escape the principles of res judicata Burton must present evidence of new or changed circumstances since the previous ALJ's decision. Therefore, the Court finds that the medical records involving treatment prior to September 2004 are not relevant to the ALJ's decision in this case.

The relevant medical records which were considered by the current ALJ include: treatment notes from a visit to the local emergency room on September 18, 2004, a consultative examination performed by Christopher Wright, M.D. on February, 6, 2005, treatment notes from a hospitalization from June 12 through June 14, 2005, treatment notes from an emergency room visit on September

6

7, 2005, and treatment notes from an emergency room visit on December 22, 2005.

As the ALJ observed, despite Burton's alleged impairments, she has not received any ongoing medical treatment for any condition. Furthermore, while Burton's hospital trips from September 2004, June 2005, and September 2005 show sporadic treatment for complaints of cough, heart skipping beats, tightness in the chest, and high blood pressure; chest X-rays were normal and revealed no acute cardiopulmonary process. Additional cardiac work-up was also normal, including an EKG and stress test which was negative for any evidence of ischemia and acute myocardial infarction was ruled out. The hospital diagnosis included acute bronchitis, hypertension, dyslipidemia, continued tobacco use and depression. Burton was encouraged to stop smoking and treated with medication. In Dr. Wright's consultative examination he reported that Burton had exogenous obesity, a history of palpitations, and degenerative joint disease of the knees. However, Dr. Wright opined that Burton could perform a moderate amount of sitting, ambulating, standing, bending, kneeling, pushing, pulling, lifting, and carrying heavy objects. The December 2005 hospital records noted that Burton sought treatment for complaints of abdominal pain. However, X-rays from the visit were normal and she was diagnosed with acute dysuria and acute urinary tract infection.

While Burton has received medical treatment for various reasons, there is no evidence in the administrative record which indicates that she is prevented from returning to her previous employment due to a medical condition. Without any evidence that Burton's physical condition had deteriorated, the ALJ properly found that Burton's exertional capacity had not changed.

Burton also argues that the ALJ did not consider the combined effects of her exertional and non-exertional impairments as required by 20 C.F.R. 404.1529. However, at step two of the analysis the ALJ considered both Burton's physical and mental impairments. The ALJ found that Burton had three severe physical impairments, and that Burton's anxiety and depression were not severe. At step three of the sequential evaluation the ALJ stated that she considered Burton's combined impairments and found that Burton did not have a combination of impairments that meet or medically equal a listed impairment. The ALJ went on to say that she reviewed all of Burton's impairments under the appropriate listings, and that these impairments individually and in combination did not meet the requisite level of severity. (TR 18, Finding No. 4). The ALJ properly considered all of Burton's limitations and applied proper legal standards. *See Gooch v. Sec. of Health and Human Servs.*, 833 F.2d 589, 591-92 (6th Cir. 1987), *cert. denied*, 484 U.S. 1075 (1988)(finding that the ALJ properly considered the claimant's impairments in combination when the ALJ

8

referred to "a combination of impairments" in deciding that the claimant did not meet the requirements of a listed impairment).

Next, Burton claims that the ALJ should have found her testimony to be credible. Burton argues that her testimony is corroborated by the medical evidence of record. Burton testified that she stopped working in May, 2000 because of swelling and pain in her legs from the amount of standing required at the job, as well as her husband's sickness. She claims to have almost constant pain in her legs which is made worse with standing. She testified that sometimes she has difficulty getting her household chores done. She says that she has high blood pressure causing headaches, poor memory, and dizziness. She also testified that her blood pressure drops at times and she nearly passes out, and has lightheadedness. She claims that her heart beats too fast and causes her to be tired all the time. She says that she has arthritis pain in her left arm and both legs. She testified that she suffers from anxiety and depression which cause her to not feel like doing things. She testified that she suffers from breathing problems and bronchitis and that she has tried to stop smoking but that causes her nerves to "get all out of whack." (TR 330-341). In regards to this testimony the ALJ found that Burton may experience some mild to moderate level of muscoloskeletal discomfort or other symptoms; however, the ALJ also found that the record fails to support the degree of pain and limitations alleged. (TR 19).

9

In evaluating subjective complaints of pain an ALJ's credibility determination is entitled to great weight and deference. This Court's review is limited to deciding whether the ALJ's explanations for discrediting Burton's testimony "are reasonable and supported by substantial evidence in the record." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 476 (6th Cir. 2003). The Sixth Circuit set forth the standard for evaluation subjective complaints of pain or limitation in *Duncan v. Secretary of Health and Human Services*:

> First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

801 F.2d 847, 853 (6th Cir. 1986).

The Court agrees with the ALJ and finds that Burton's allegations of pain and limitations are contradicted by the objective medical evidence. In his evaluation Dr. Wright could find no functional limitation related to Burton's heart. Dr. Wright found that Burton was capable of performing a moderate amount of sitting, ambulating, standing, bending, kneeling, pushing, pulling, lifting, and carrying heavy objects. The treatment that Burton received was conservative in nature with no referrals for surgery or other aggressive measures. Despite

10

Burton's doctors visits and trips to the emergency room there was no documentation of any muscolosketal, neurological, cardiac or pulmonary abnormality which could reasonably be expected to result in total disability.  Furthermore, the only pain medication that Burton took was Advil.  Burton failed to sustain any consistent treatment.  In addition Burton reported that she remains capable of caring for her personal needs, she cooks, does the laundry, washes the dishes, dusts, visits family and friends, attends church weekly, drives and goes shopping.  Thus, because the record fails to contain any evidence to confirm Burton's subjective complaints of disabling pain, the ALJ committed no error in discounting Burton's testimony.

Burton next contends that the ALJ was not entitled to rely on the vocational expert's (VE) testimony because the hypothetical question did not adequately describe Burton's physical and mental limitations.  In her hypothetical to the VE the ALJ limited Burton to medium exertional level work.  The VE testified that given that restriction Burton could return to the work she previously did. While the hypothetical to the VE must accurately portray the claimant's abilities and limitations, see *Felisky v. Bowen*, 35 F.3d 1027, 1036 (6th Cir. 1994), it need incorporate only those limitations accepted as credible by the finder of fact, see *Casey v. Secretary of Health and Human Services*, 987 F.2d 1230, 1235 (6th Cir. 1993).  As the Court has previously stated, it was not error

11

to discredit Burton's testimony regarding the severity and degree of her limitations. The hypothetical question posed to the VE included all of the limitations accepted by the ALJ and was supported by the opinions in the record. Therefore, the Court finds that the hypothetical question to the VE was adequate and the ALJ's reliance upon the VE's testimony was not error.

Burton lastly argues that the Medical-Vocational Guidelines (Grids) establish that someone of her age, education, and prior work experience who is limited to light work is disabled. This argument fails for two reasons. First, the ALJ found that Burton was limited to medium work, not light work. When limited to medium work the Grids did not direct a finding of "disabled" for individuals like Burton. Second, the Grids only apply after a claimant has met their burden at step four of the sequential evaluation in proving that they are unable to perform their past relevant work. *See* 20 C.F.R. 404, subpt. P, app. 2 Rule 200.00. Since substantial evidence supports the ALJ's conclusion that Burton can perform her past relevant work, the Grids are inapplicable.

The Court finds that the Commissioner's decision is supported by substantial evidence and decided by the proper legal standards.

### V. CONCLUSION

Accordingly, and for the foregoing reasons, **IT IS ORDERED:**

12

(1) That Burton's motion for summary judgment [Record No. 10] be, and the same hereby is, **DENIED**; and

(2) That the Commissioner's motion for summary judgment [Record No. 11] be, and the same hereby is, **GRANTED**.

This the 6th day of June, 2008.



**Signed By:**
***Joseph M. Hood***
**Senior U.S. District Judge**